UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| **PATRICK GARZA,** | § |
| | § |
| **Plaintiff,** | § |
| | §     Case No.: |
| v. | § |
| | § |
| **VERNOR MATERIAL &** | § |
| **EQUIPMENT CO., INC.** | §     **TRIAL BY JURY** |
| | §     **DEMANDED** |
| **Defendants.** | § |
| | § |

**PLAINTIFF'S ORIGINAL COMPLAINT
AND REQUEST FOR INJUNCTIVE
RELIEF**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

PATRICK GARZA (hereinafter "Plaintiff"), complains of VERNOR MATERIAL & EQUIPMENT CO., INC., and for cause of action would show the Court as follows:

### INTRODUCTION

1. Plaintiff demands a jury trial in this case as to any and all issues triable to a jury.

2. Plaintiff files this Complaint and complains about disability discrimination under the Americans With Disabilities Act ("ADA"), 42 U.S.C § 12101 *et seq.*, as amended.

1

3. Plaintiff files this Complaint and complains about retaliation under the Americans With Disability Act ("ADA") pursuant to 42 U.S.C. § 12203(a)-(b).

4. Plaintiff seeks to be made whole, including but not limited to compensatory damages, plus lost wages (past, present, and future), attorney's fees, taxable court costs, pre-judgment and post judgment interest.

## PARTIES

5. Plaintiff, Patrick Garza, is a resident of Freeport, Texas.

6. Defendant, Vernor Material & Equipment Co., Inc. ("VME") is a Texas Corporation and may be served through its registered agent, Kenneth K. Vernor, 435 Commerce St. Freeport, TX 77541.

## VENUE

7. Venue is appropriate in the United States District Court for the Southern District of Texas, Galveston Division because a substantial portion of the events or omissions giving rise to the claim occurred here. *See* 28 U.S.C. § 1391(b)(2).

## JURISDICTION

8. This court has personal jurisdiction of this action because the unlawful employment practices were committed within the jurisdiction of this Court.

9. This court has original subject-matter jurisdiction of this action

pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) under the ADA, as amended.

## PROCEDURAL PREREQUISITES

10. All conditions precedent to the filing of this action have been met by Plaintiff in that he has filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC") and has exhausted all other administrative remedies from said agency to pursue his claims.

## FACTS

11. VME is a construction company that operates heavy equipment associated with construction, demolition, and road building.

12. Mr. Garza, Plaintiff, began working for VME as a Fuel Driver on November 21, 2014.

13. Plaintiff's job duties involved transporting fuel to various work sites and fueling other vehicles and equipment.

14. By all accounts, Plaintiff was an excellent employee for Defendant, consistently performing his job duties in a prompt and safe manner.

15. On January 25, 2017, Mr. Garza slipped while climbing down from his truck at a gas station when his foot landed on a mud clod and caused him to lose his balance. Mr. Garza hit his head and left shoulder on the truck.

16. Mr. Garza immediately reported the work injury to George Rodriguez, his supervisor at VME. VME created a report in response to the

incident.

17. By March of 2017, Mr. Garza was experiencing lingering pain in his shoulder which was only worsening.

18. On March 13, 2017, Mr. Garza informed Laura Chavez of his ongoing pain and a report was made for the same.

19. On March 14, 2017, Mr. Garza saw his primary care physician, Dr. Resnick, who referred Mr. Garza for an X-Ray, which revealed no fractures or dislocations.

20. In May of 2017 Mr. Garza took FMLA leave so that he could care for his father.

21. Mr. Garza was scheduled to return to work on June 12, 2017, his father died on May 23, 2017.

22. While still on leave, Mr. Garza returned to Dr. Resnick due to the unresolved pain in his left shoulder which only seemed to be getting worse.

23. Dr. Resnick ordered an MRI of Mr. Garza's shoulder which revealed a rotator cuff and bicep tear.

24. Mr. Garza informed George Rodriguez of his diagnosis and its connection to the January 25 incident. Mr. Garza's doctors agreed that the injury stemmed from the January 25 slip.

25. Upon returning from FMLA leave on June 12, 2017, Plaintiff asked his supervisors at VME if he could return to work on light duty, but was

informed that light duty was not available for truck drivers.

26. Mr. Garza underwent rotator cuff repair surgery in October of 2017.

27. In the wake of his surgery, Mr. Garza developed adhesive capsulitis, a common side effect of rotator cuff surgery which requires additional treatment and often causes continued pain and mobility issues in the affected shoulder.

28. Even though Plaintiff and his healthcare providers had been consistently communicating with VME as to his condition post-surgery, VME terminated Mr. Garza on February 1, 2018 in direct violation of company policy and the ADA.

29. Plaintiff's termination letter stated that even though he was terminated, he remained in good standing with VME and that upon reapplication he would be considered for a position.

30. Plaintiff's termination letter further stated that he had been terminated "as a result of a few factors."

31. First, the letter noted that Plaintiff had exhausted all of his accrued vacation time. Second, the letter noted Plaintiff's 12 weeks of FMLA leave. Finally, the letter noted that "[b]ecause there has been an increase in work at VME, we have had to hire someone to fill your position."

32. The truth is that no one was hired to fill Mr. Garza's position, and at no point during the EEOC investigation has Defendant made reference

to any specific employee or employees who were hired to replace Plaintiff.

33. Plaintiff desired to return to VME, but VME refused to rehire him.

34. Defendant's company policy reads as follows:

> 13. Inactive Status
> At the end of the initial six-month period after the injury, an injured employee unable to return to regular duty will be placed on inactive status unless an extension of injury leave is expressly authorized by Vernor. At the time the employee is placed on inactive status, Vernor is free to hire or promote a temporary replacement. Temporary replacements may be used for a period of six months. If at the end of that six-month period the injured employee remains unable to work, the temporary replacement may be become a regular employee. The injured employee will remain on Vernor's records in an "inactive" status (*not terminated*).

(emphasis added)

35. In short, after an employee has been on leave due to an injury for 6 months, VME's policy is to designate the employee as "inactive." After 6 months of inactivity the company may hire temporary employees into permanent roles to fill in during the continued absence of injured employees.

36. Mr. Garza had worked for Defendant as recently as June of 2017. Accounting for the first 6 months of injury, and then the 6 months of inactivity carved out by VME's own policy, Plaintiff's position should have been preserved in an inactivity state until June of 2018, under Defendant's own rules.

37. VME terminated Plaintiff because they did not want to reasonably

accommodate Plaintiff's injuries. Reasons proffered by Defendant for Mr. Garza's termination are pretextual.

38. After VME illegally terminated him, Mr. Garza filed a charge of discrimination with the EEOC on February 6, 2019 and amended that charge on April 3, 2019.

39. Mr. Garza was cleared to return to work on April 17, 2018. Despite the limited range of motion in his left arm due to adhesive capsulitis, Mr. Garza was able to perform the essential job functions of operating a large truck and has done so since his termination without accommodation.

40. Relying on the language in his termination letter, Plaintiff reapplied to VME on August 28, 2018, but was denied.

41. Plaintiff also began searching for employment at other companies as a truck driver, but because he was struggling to find employment, and after several months of trying and failing to find work, he hired a reference checking company.

42. Mr. Garza was informed that Amy Sanchez, a member of VME's HR team was telling other trucking companies that Mr. Garza had "4 or 5 incidents in his profile." This was a complete fabrication and was further evidence of retaliation for filing with the EEOC.

43. In addition, when prospective employers reached out to VME for DOT documentation regarding Mr. Garza, VME refused or failed to give

      these documents to the companies, effectively blackballing Mr. Garza.

44. VME blackballed Mr. Garza in retaliation for Mr. Garza filing an EEOC charge and enforcing his rights under the ADA.

## COUNT I

### DISCRIMINATION ON THE BASIS OF DISABILITY UNDER THE ADA

45. Plaintiff has a disability which impairs his mobility and causes pain in his left arm.

46. Plaintiff was qualified for a job at VME. He was able to perform the essential functions of a truck driver without accommodation, and he did so at a subsequent employer.

47. Plaintiff suffered an adverse employment action when Defendant fired him and when Defendant refused to rehire him because of his disability.

48. As a direct, legal, and proximate result of this discrimination, Plaintiff has sustained economic injuries, resulting in damages in an amount to be proven at trial.

## COUNT II

### RETALIATION UNDER THE ADA

49. After Plaintiff filed his EEOC charge against Defendant, they refused to re-hire him.

50. Defendant interfered with Plaintiff's attempts to become re-employed by misrepresenting his employment history to prospective employers.

51. Defendant interfered with Plaintiff's attempts to become re-employed

   by refusing to provide documentation to prospective employers.

52. Defendant substantially interfered with Plaintiff's attempt to become re-employed.

## DAMAGES

53. As a direct and proximate result of the aforementioned acts, Plaintiff suffered loss of wages, past, present, and future, as well as compensatory damages, including but not limited to emotional distress.

## PUNITIVE DAMAGES

54. Defendant's actions were intentional, willful, harsh, oppressive, and malicious. The wrongs done by Defendant were aggravated by the kind of willfulness, wantonness, and malice for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

## ATTORNEY'S FEES

55. Defendant's actions and conduct, as described herein, and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining the services of attorneys in order to initiate this proceeding. Plaintiff seeks recovery of reasonable and necessary attorney's fees.

## JURY DEMAND

56. Plaintiff hereby restates his request for a jury trial.

## INJUNCTIVE RELIEF

57. Plaintiff seeks injunctive relief requiring Defendants to take affirmative and effective steps towards those who have failed to comply with the Americans With Disabilities Act of 1991, as amended.

58. Plaintiff especially seeks a mandatory injunction ordering Defendants to reinstate Plaintiff to his job with appropriate accommodations for his disability.

## PRAYER

59. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant be cited to appear and answer, and that on final hearing of this cause, Plaintiff has the following relief:

    a. Back Pay;

    b. Pre-Judgment Interest on Back Pay;

    c. Front Pay;

    d. Compensatory Damages, including, but not limited to, emotional distress;

    e. Injunctive and Affirmative Relief;

    f. Attorney's Fees and Costs;

    g. Reinstatement accommodating Plaintiff's disability;

    h. Such other and further relief at law or in equity, general or special to which Plaintiff may show he is justly entitled.

Dated: January 15, 2021

By: */s/ Bruce A. Coane*
Bruce A. Coane, Attorney-in-Charge
S.D. Tex. #7205
TX Bar #04423600
Email: bruce.coane@gmail.com
Ashton P. Hoffman
S.D. Tex. #3472693
TX Bar #24116525
Email: ashton.hoffman@coane.com
Matthew P. Swiger
S.D. Tex #2276929
TX Bar #24088495
Email: matt.swiger@coane.com
Coane and Associates, PLLC
5177 Richmond Ave., Suite 770
Houston, TX 77056
Telephone: (713) 850-0066
Facsimile: (713) 850-8528
**ATTORNEYS FOR PLAINTIFF**